IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHNNY L. WILSON, #A82195,            )
                                      )
            Plaintiff,                )
                                      )
v.                                    )        Case No. 23-cv-106-RJD
                                      )
PATRICK A. RIGGS,                     )
                                      )
            Defendant.                )

**ORDER**

**DALY, Magistrate Judge:[1]**

    Plaintiff Johnny L. Wilson, an inmate of the Illinois Department of Corrections (IDOC) currently detained at the Lawrence Correctional Center (Lawrence), brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging deprivations of his constitutional rights.  Doc. 1.  Plaintiff alleges Defendant Patrick Riggs slammed a door on him, causing serious injuries.  *Id.*  He seeks monetary damages.  *Id.*  After threshold review of the Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on an Eighth Amendment excessive force claim against Riggs.[2]  Doc. 9.

    This matter comes before the Court on Plaintiff's Motion for Clarification (Doc. 28) and *Daubert* Motion (Doc. 29) as well as on Defendant's Motion for Summary Judgment (Doc. 30).  For the reasons set forth below, all motions are **DENIED**.

---

[1] This matter has been referred to the undersigned, through the parties' consent, to conduct all proceedings in this case, including trial and final entry of judgment pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 15).

[2] Plaintiff also brought an Eighth Amendment deliberate indifference claim against Defendant Fry, which was dismissed at threshold review for failure to state a claim.  Doc. 9, pp. 3-4.

**Plaintiff's Motion for Clarification (Doc. 28)**

On November 13, 2024, Plaintiff filed a motion requesting clarification on a deposition notice that he received from defense counsel.  Doc. 28.  Plaintiff's deposition was taken on November 26, 2024, and there is no indication that any clarification is still needed.  Doc. 30-1. Accordingly, Plaintiff's motion is **DENIED as moot.**

**Plaintiff's *Daubert* Motion (Doc. 29)**

Plaintiff filed a motion titled *Daubert* Motion wherein he states that he seeks expert testimony/evidence to be presented before this Court.  Doc. 29.  Plaintiff does not state whether he has retained an expert witness or what expert evidence he wishes to present.  *Id. Daubert* motions seek to exclude expert testimony or evidence.  Here,  neither Plaintiff nor Defendant argues that there is a discovery dispute regarding the disclosure of any expert witnesses.  Accordingly, Plaintiff's *Daubert* motion is **DENIED**.

**Defendant's Motion for Summary Judgment (Doc. 30)**

On November 13, 2024, Defendant filed a motion for summary judgment.  Doc. 30. Defendant's motion contains a Statement of Facts with proper citation to the record in accordance with Local Rule 56.1.  SDIL-LR 56.1(a); (Doc. 53, pp. 3-7).  Plaintiff responded on January 21, 2025.  Doc. 32.  Plaintiff did not specifically dispute Defendants' Statement of Facts.  *Id.* Accordingly, all material facts set forth therein are being deemed admitted unless they are unsupported by evidence in the record based on the Court's independent review.  SDIL-LR 56.1(g).

## Factual Background

On November 9, 2019, Wilson fell in the laundry room and injured his right ankle.  Doc. 30, ¶2; Doc. 30-1, Plaintiff's Deposition, pp. 35:24–35:8;  Doc. 30-2, Cumulative Counseling Summary, p. 9.  Wilson received treatment for his right ankle.  Doc. 30, ¶3; Doc. 30-1, pp. 36:12–37:1.  On August 7, 2020, a Medical Special Services Referral and Report was filled out, referring Wilson to further orthopedic treatment.  *Id.*; Doc. 30-3, Medical Special Services referral and Report, p. 1.

On January 17, 2021, Wilson went to the front door of his living unit to receive an insulin shot.  Doc. 30, ¶4; Doc. 30-1, p. 20:16–23.  While the insulin shot was being administered, the nurse sat at a table right outside the door, and the individual in custody receiving the shot stood at the doorway.  Doc. 30, ¶5; Doc. 30-1, pp. 20:21–22:4.  The front door automatically closes if no one is holding the door open.  Doc. 30, ¶6; Doc. 30-1, pp. 23:24–25:5.  On January 17, 2021, Sergeant Riggs opened the door for Wilson during Wilson's insulin shot, and Sergeant Riggs held the door open.  Doc. 30, ¶7; Doc. 30-1, p. 23:18–23.  Wilson alleges that a verbal exchange took place between Riggs and Wilson, and Riggs "slammed" the door on Wilson.  Doc. 30, ¶8; Doc. 30-1, pp. 25:6–21, 26:11–17.  Wilson alleges that he was "stuck between the door" and injured his left toe, right ankle, and left arm.  Doc. 30, ¶9; Doc. 30-1, pp. 27:2–30:25.  Wilson claims that after the door hit him, Sergeant Riggs walked back to the control center.  Doc. 30, ¶10;  Doc. 1, p. 5.  Wilson claims that he was not allowed to see healthcare after the incident.  Doc. 30, ¶11; Doc. 30-1, p. 31:1–8.

Wilson's medical records show that Wilson received medical attention on January 18, 2021, at which time Wilson described a "constant" pain in the right foot on a self-described pain scale of 8 out of 10.  Doc. 30, ¶12; Doc. 30-1, pp. 31:25-34:21; Doc. 30-4, Offender Outpatient

Progress Notes, Jan. 18, 2021, p. 1. The duration of pain was noted as "broke foot years ago," and the notes indicate Wilson stated that this pain was "starting to hurt more," and the crutch no longer gives support. *Id.* Wilson's January 18, 2021, medical record does not state that Wilson complained of any injury to his left toe, left arm, or that he was slammed by a door the day before. Doc. 30, ¶13; Doc. 30-4, p. 1.

In April of 2021, Wilson was diagnosed with arthritis in the right ankle. Doc. 30, ¶14; Doc. 30-1, p. 37:3–21; Doc. 30-3, p. 1. The April 2021 medical notes show that Wilson told the doctor that he fell in the laundry room in November 2019. Doc. 30, ¶15; Doc. 30-1, pp. 37:25–38:9; Doc. 30-3, pp. 3-6. The notes do not show that Wilson told the doctor that a door was slammed on him in January of 2021 or that he sustained any injury from a door being slammed on him, or that he had an injury on the left toe or left arm. *Id.* The "Additional History" section of this record stated: "Patient indicated that they are having pain on the lateral side of their ankle. No [history] of known surgery or injury." *Id.* Wilson does not recall if he told the doctor about being slammed by a door. *Id.* On October 28, 2021, an X-ray was taken of Wilson's left foot, which revealed "no acute bony fracture or bony erosive process and no soft tissue calcification." Doc. 30, ¶16; Doc. 30-1, pp. 40:6–42:9; Doc. 30-5, OneRadiology Report, Oct. 29, 2021; Doc. 30-6, Laboratory and Radiology Summary, Nov. 2, 2021.

*Plaintiff's Deposition*

During his deposition, Plaintiff testified that on January 17, 2021, he was taken to the front entry of his living unit to receive an insulin shot. Doc. 30-1, pp. 20-21. Nurse Fry was administering the shots. *Id.* pp. 11-12. Due to the COVID-19 pandemic, Nurse Fry had set her table outside the unit door. *Id.* at 21. Defendant Riggs was holding the door for the inmates who "stick [their] finger out around the corner" to get administered the insulin shot. *Id.* at 21, 23. The

door was made of solid metal with a thick, wiry glass in its middle. *Id.* at 22. It opened outward

and closed automatically. *Id.* at 22-24. While Plaintiff was standing at the doorway with his arm

extended, waiting for the insulin shot, Defendant Riggs became upset "over nothing" and slammed

the door on Plaintiff "too hard." *Id.* 24-25, 28-29. Plaintiff's ankle, which was already injured

from an accident in 2019, gave out. *Id.* at 26. Plaintiff fell and got stuck between the door and the

door frame. *Id.* at 27-28. Another officer opened the door to allow Plaintiff to escape. *Id.* at 27-

29. Plaintiff injured his left toe, right ankle, and left arm. *Id.* at 29-30.

Plaintiff initially testified that he did not receive treatment for his injury until after the end

of quarantine, closer to June 2021. Doc. 30-1, p. 31. When confronted with his medical records

showing that he saw a medical provider one day after the incident, on January 18, 2021, Plaintiff

responded that he had no recollection. Plaintiff testified that he first broke his right ankle in 2019.

*Id.* at 35. Because he never received proper treatment for that injury, the pain never went away.

*Id.* Plaintiff recalled visiting an outside doctor in April 2021, based on a referral made in August

2020 for his broken ankle. *Id.* at 37-38. However, he did not recall telling the doctor that he

reinjured his ankle when the door was slammed on him. *Id.*

Plaintiff also testified that he began having issues with his left toe before June 23, 2021.

Doc. 30-1, pp. 38-39. On that day, Plaintiff received a referral for the removal of his great toe. *Id.*

at 39. When Plaintiff's great toe was removed, Plaintiff developed gangrene, which resulted in his

entire foot being amputated. *Id.* at 39. Plaintiff argued that he injured, but did not fracture, his left

toe on January 17, 2021. *Id.* at 43. He claimed the injury contributed to his amputation on March

7, 2022. *Id.* at 18-19, 43-44. Plaintiff cannot ambulate, and since October or November 2021, he

has been using a wheelchair to move around. *Id.* at 18-19.

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). Further, a "nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, . . . automatically result in judgment for the movant"; the movant "must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir.2006); *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 997 (7th Cir.1996). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

**Discussion**

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). "In cases involving the claimed use of excessive force, 'the core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Outlaw*, 259 F.3d at 837 (quoting *Hudson*, 503 U.S. at 7). Prison officials who fail to take reasonable steps to intervene and prevent the use of excessive force may be liable under the Eighth Amendment. *Wilburn v. Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018) (citing *Young v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

Defendant first argues he is entitled to summary judgment because Defendant's alleged use of excessive force on January 17, 2021, only caused Plaintiff a *de minimis* injury. He argues there is no evidence that the door-slamming caused the pain to Plaintiff's right foot or that Plaintiff's left toe or left arm had any discomfort or injury at all. Defendant, however, conflates the use of *de minimis* force, which may fall outside the scope of an Eighth Amendment excessive force claim, with the infliction of *de minimis* injury. The Seventh Circuit has rejected the argument that significant injury is an element of an excessive force claim, explaining that prior references to *de minimis* force in the Seventh Circuit's precedent did not purport to "revive a significant-injury requirement by other means, but to emphasize an important difference between constitutional law and private law." *See Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012). While under common law the "unwelcome tickle with a feather can lead to an award of damages," this use of de minimis *force* is insufficient to establish an Eighth Amendment excessive force claim. *Id.*

Page **7** of **11**

Here, Plaintiff testified that Defendant slammed a solid metal door on him while he was standing at the doorway. He testified that Defendant slammed the door "too hard," which caused Plaintiff's injured right ankle to give out, and Plaintiff to fall. The door was heavy and had an automatic closing mechanism that caused Plaintiff to become trapped between it and the door frame. Even if Plaintiff did not suffer any further injuries as a result of that conduct, a reasonable jury could infer that Defendant inflicted on Plaintiff a more than *de minimis* amount of force.

Defendant next argues there is no evidence that he intended to physically harm or use any force against Plaintiff. But the record suggests otherwise. Plaintiff testified that without any provocation, Defendant got frustrated and purposefully slammed the door on Plaintiff, then abandoned him stuck between the door and the doorway. Doc. 30-1, p. 25. Indeed, nothing in the record suggests that Defendant slammed the door for some penological purpose or in a good-faith effort to maintain or restore discipline. The Supreme Court has identified several non-exhaustive considerations to determine whether the use of force is excessive under the Eighth Amendment: "(1) the need for the force; (2) the relationship between that need and the amount of force used; (3) the extent of any injury; (4) the threat reasonably perceived; and (5) efforts to temper the force's severity." *Hammer v. Bortz*, No. 23-1842, 2024 WL 2559204, at *3 (7th Cir. May 24, 2024).

Here, Defendant has not argued that the use of force was necessary due to an underlying threat. Accordingly, the first, second, and fourth factors weigh against him. The fifth factor also weighs against Defendant because there is nothing in the record suggesting that he attempted to temper the severity of the force he used: he did not try to block the door from slamming Plaintiff or even assist Plaintiff to escape once he got stuck between the door and the door frame. Even if Plaintiff had not suffered any further injury beyond the inflicted pain, the analysis shows that the Defendant is not entitled to judgment as a matter of law. Viewing the record in the light most

Page **8** of **11**

favorable to Plaintiff, a reasonable jury could infer that Defendant acted maliciously and sadistically with the purpose to harm when he slammed the solid metal door on Plaintiff, causing him to get stuck between the door and the door frame.

Defendant's reliance on the Seventh Circuit's decision in *Outlaw v. Newkirk* is misplaced. 259 F.3d 833 (7th Cir. 2001). There, the Seventh Circuit held that a minor injury sustained by an inmate when the guard closed a cuffport door on his hand in a maximum-security prison was insufficient to maintain an Eighth Amendment excessive force claim. *Outlaw v. Newkirk*, 259 F.3d 833 (7th Cir. 2001). The court explained that all the evidence demonstrated that the guard "had a legitimate security reason to close the cuffport door" because the inmate was either actually attempting to throw garbage or was merely holding it through the cuffport while uttering hostile words, and that in closing the door, the guard applied only enough force to cause superficial injuries to Outlaw's hand. *Outlaw*, 259 F.3d at 839. Here, however, there is nothing in the record to suggest that Defendant slammed the door on Plaintiff in a good-faith effort to maintain or restore discipline. Defendant did not even argue to that effect.

Likewise, *DeWalt v. CarterOfficer*, on which Plaintiff also relies, is distinguishable. 224 F.3d 607 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). The court there held that the single and isolated "simple act of shoving" a prisoner against the door and into the doorframe, which resulted solely in the prisoner's bruising, did not violate the Eighth Amendment. *Id.* Here, however, Plaintiff testified that Defendant forcefully slammed the solid metal door on him, causing him to be trapped between the door and the door frame and to reinjure his right ankle. There is a qualitative distinction between these two conducts.

Thus, there remain material questions of fact in dispute that prevent entry of summary judgment in Defendant's favor.

Page **9** of **11**

**Qualified Immunity**

Defendant further argues he is entitled to summary judgment on qualified immunity grounds. Generally, government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). Thus, to evaluate a claim of qualified immunity, the Court engages in a two-part inquiry. The first question is whether the defendants' conduct violated a constitutional right. *Volkman v. Ryker*, 736 F.3d 1084, 1090 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009)). The second question is whether that particular constitutional right was "clearly established" at the time of the alleged violation. *Id.* The two questions may be considered in either order. *Volkman*, 736 F.3d at 1090 (citing *Pearson*, 555 U.S. at 236-42).

Defendant asserts he is entitled to qualified immunity because Plaintiff cannot establish he violated his constitutional rights, and because Defendant could not have known that he might be liable even though he only used minimal force. However, as explained above, there is evidence supporting the inference that Defendant used more than minimal force when he slammed the door on Plaintiff, causing him to become trapped between the door and the doorframe. Also, it was clearly established on January 17, 2021, the day of the alleged incident, that applying force in a manner inconsistent with maintaining or restoring discipline implicates an inmate's constitutional rights, and Plaintiff has submitted some evidence establishing this. Accordingly, Defendant is not entitled to summary judgment on qualified immunity grounds.

## Conclusion

For these reasons, Plaintiff's Motion for Clarification (Doc. 28) and *Daubert* Motion (Doc. 29), as well as Defendant's Motion for Summary Judgment (Doc. 30), are **DENIED**.


**IT IS SO ORDERED.**

**DATED: September 15, 2025**


*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**